IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| J.M. | § | PLAINTIFF |
| | § | |
| | § | |
| v. | § | Civil No. 3:15CV841-HSO-JCG |
| | § | |
| | § | |
| MANAGEMENT & TRAINING | § | |
| CORPORATION, *et al.* | § | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT D.H.'S [80] MOTION FOR JUDGMENT ON THE PLEADINGS, AND DENYING PLAINTIFF'S [76] MOTION FOR PARTIAL SUMMARY JUDGMENT

BEFORE THE COURT are Defendant D.H.'s Motion for Judgment on the Pleadings [80], and Plaintiff J.M.'s Motion for Partial Summary Judgment [76], asking the Court to enter an Order finding Defendant D.H. liable as a matter of law. These Motions are fully briefed. After due consideration of the Motions [76], [80] the record, and relevant legal authority, the Court finds that both Motions [76], [80] should be denied.

I. BACKGROUND

Defendant Management & Training Corporation ("MTC") is a private prison company operating under a contract with the Mississippi Department of Corrections ("MDOC") for the management and oversight of the Walnut Grove Correctional Facility ("WGCF") in Walnut Grove, Mississippi. Am. Comp. [15] at 2. According Plaintiff J.M. ("Plaintiff"), while he was incarcerated at WGCF on March 7, 2015,

1

Defendant D.H.,[1] an MTC officer, sexually assaulted him and his cellmate. *Id.* at 3. Plaintiff claims that D.H. threatened him and his cellmate with violence and/or recriminations following the assault in order to prevent the men from exposing D.H.'s conduct to prison officials or discussing the assault with anyone. *Id.* Plaintiff alleges that despite the threats, on March 30, 2015, he filed a grievance with WGCF officials. *Id.*

Plaintiff also alleges that D.H. had engaged in prior similar conduct of which MTC supervisors were aware. *Id.* at 4. According to Plaintiff, "MTC was generally aware of allegations regarding improper sexual conduct between correctional officers and inmates prior to the incident." *Id.* However, Plaintiff maintains that after he filed his grievance with officials, they took no corrective measures nor commenced any disciplinary action against D.H. *Id.* at 3.

On November 19, 2015, Plaintiff filed a Complaint [1] against MTC, asserting claims pursuant to 42 U.S.C. § 1983, for negligent and/or grossly negligent hiring and supervision, and for respondeat superior. Compl. [1] at 4-6. With leave of Court, Plaintiff filed a First Amended Complaint [15] on April 4, 2016, against MTC and individual Defendant D.H. The First Amended Complaint [15] advances claims pursuant to 42 U.S.C. § 1983 against MTC and D.H. and claims for negligent and/or grossly negligent hiring and supervision and respondeat superior/vicarious liability against MTC. *Id.* at 4-6. Plaintiff maintains that Defendants violated his rights

---

[1] "Due to the serious accusations, the name of the officer [was not] identified publicly," and he was only identified as D.H. Am. Compl. [15] at 1 n.2.

under the Eighth and Fourteenth Amendments to the United States Constitution. *Id.* at 1, 4.

On the March 24, 2017, Plaintiff filed a Motion for Partial Summary Judgment [76], asserting that "there is no genuine issue of material fact regarding whether D.H. sexually assaulted J.M. As such, J.M. is entitled to partial summary judgment on liability as to his claims against D.H." Mem. [77] at 1. Plaintiff seeks "an Order finding the Defendant, D.H., liable as a matter of law." *Id.* at 5. D.H. responds that Plaintiff's First Amended Complaint [15] "is completely void of sufficient factual matter stating any claim against [D.H.], and therefore fails to state any claim against [D.H.] upon which relief can be granted." Mem. [96] at 2. D.H. alternatively argues that genuine issues of material fact exist which preclude summary judgment. *Id.*

Also on March 24, 2017, D.H. filed a Motion for Judgment on the Pleadings [80] pursuant to Federal Rule of Civil Procedure 12(c). D.H. argues that, as to each of Plaintiff's claims, his "First Amended Complaint, on its face, is completely void of sufficient factual matter stating a claim against D.H., and D.H. should therefore be dismissed from this cause of action." Mot. [80] at 2-3. Plaintiff responds that D.H. ignores portions of the First Amended Complaint, that this pleading states a valid claim for relief against D.H., and that the Motion should be denied. Resp. [90] at 3-4.

## II. DISCUSSION

A. <u>D.H.'s Motion for Judgment on the Pleadings [80] should be denied.</u>

1. <u>Relevant legal authority</u>

The United States Court of Appeals for the Fifth Circuit has held that the standard applicable to a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). A pleading is not sufficient, however, if it offers mere labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Id.*

Plaintiff advances claims against D.H. under 42 U.S.C. § 1983 for alleged violations of the Eighth and Fourteenth Amendments. "Section 1983 liability results when a 'person' acting 'under color of' state law, deprives another of rights 'secured by the Constitution' or federal law." *Doe v. United States*, 831 F.3d 309, 314 (5th Cir. 2016) (quoting 42 U.S.C. § 1983). "A Section 1983 claim requires that a plaintiff (1) allege a violation of a right secured by the Constitution or laws of the

United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees*, 855 F.3d 681, 687 (5th Cir. 2017) (quotation omitted).

"[T]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Copeland v. Nunan*, 250 F.3d 743, 2001 WL 274738, at *2 (5th Cir. 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)). In an unpublished opinion, however, the Fifth Circuit has held that "sexual assaults against inmates by prison guards without lasting physical injury may be actionable under the Eighth Amendment as acts which are 'offensive to human dignity.'" *Id.* (quoting *Schwenk v. Hartford*, 204 F.3d 1187, 1196-97 (9th Cir. 2000)).

2. <u>The First Amended Complaint states a claim for relief against D.H.</u>

The Court finds that the First Amended Complaint contains sufficient factual allegations that, if true, could state a claim for a violation of Plaintiff's constitutional rights. The First Amended Complaint alleges that D.H., while a correctional officer at WGCF, entered Plaintiff's cell and "demanded that Plaintiff and his cell mate engage in a 'threesome' with him." 1st Am. Compl. [15] at 3. Plaintiff alleges that "D.H. advised both men that he would kill them should they not engage in said sexual activity/intercourse with him," and that Plaintiff, who was fearful for his life, was "forcibly raped by D.H." *Id.* Plaintiff's allegations contain sufficient factual matter as to a purported sexual assault that, if accepted as true,

5

would state a violation of Plaintiff's constitutional rights under the Eighth Amendment. *See Copeland*, 2001 WL 274738, at *2.

While D.H. does not specifically challenge this element in his Motion [80] or Reply [99], the First Amended Complaint also contains sufficient factual matter, if accepted as true, to establish that D.H. was acting under color of state law in his role as a correctional officer at WGCF. *See Doe*, 831 F.3d at 314. While D.H.'s employer MTC is a private prison operator, the First Amended Complaint alleges the existence of a contractual relationship between MTC and the MDOC for operation of WGCF, and sufficiently alleges facts from which one could draw the reasonable inference that D.H. misused power possessed by virtue of state law, made possible only because D.H. was clothed with the authority of state law in his role as a correctional officer. *See Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (quoting *United States v. Causey*, 185 F.3d 407, 415 (5th Cir. 1999)) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."). The First Amended Complaint therefore states a plausible claim against D.H. pursuant to 42 U.S.C. § 1983. D.H.'s Motion for Judgment on the Pleadings [80] should be denied.

B.  <u>Plaintiff's Motion for Partial Summary Judgment [76] should be denied.</u>

    1.  <u>Summary judgment standard</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any

6

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to carry this initial burden, a movant "must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted).

If the movant carries its burden, "[t]he burden then shifts to the nonmovant to demonstrate a genuine issue of material fact, but the nonmovant cannot rely on the allegations in the pleadings alone." *Id.* "Instead, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* (quotation omitted). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Savant v. APM Terminals*, 776 F.3d 285, 288 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl., L.L.C.,* 767 F.3d at 511.

2. <u>Evidence submitted to support the parties' differing version of events</u>

Plaintiff maintains that it is an undisputed fact that he was forcibly raped by D.H., while D.H. responds that what actually occurred remains a question of fact for the jury to decide.

7

a.  <u>Plaintiff's version of the alleged sexual assault</u>

In support of his request for summary judgment, Plaintiff has submitted his own deposition testimony under seal, wherein he testifies that D.H. entered his and R.H's cell at WGCF around 3:00 a.m. on March 7, 2015, threatened Plaintiff and R.H., and forced Plaintiff and R.H. to perform certain sexual acts with him.  Pl.'s Dep. [78] at 35-36.  According to Plaintiff, D.H. performed oral sex upon him, and then "had [Plaintiff] perform oral sex on him."  *Id.*  Plaintiff asserts that D.H. also engaged in "sexual intercourse with [R.H.]," and then "asked [Plaintiff] to pull [his] pants down."  *Id.*  Plaintiff claims that D.H. "must have heard some keys or something" and abruptly left the cell.  *Id.* at 36.  Plaintiff has also presented the sealed deposition testimony of his former cellmate, R.H.  R.H. similarly testifies that D.H. entered R.H. and Plaintiff's cell at WGCF around 2:45 a.m. on the morning in question, threatened both inmates, and forced them to perform sexual acts against their will.  R.H.'s Dep. [78-1] at 9-10, 46.

Later that morning, D.H. allegedly threatened Plaintiff and R.H. to not tell anyone what had occurred.  R.H.'s Dep. [78-1] at 35-36, 40; Pl.'s Dep. [78] at 37-38, 66.  Plaintiff was nevertheless able to telephone his sisters, one of whom contacted officials at WGCF to report the incident.  Pl.'s Dep. [78] at 36-37, 53-54; MDOC Incident Detail [78-2] at 6; Employee Incident Reports [78-2] at 8, 10.  After the alleged assault, another inmate, J.J., told officials that he had engaged in "sexual favors" with D.H. "in exchange for drugs, spice, [and] tobacco products."  Pl.'s Dep. [78] at 55; *see also* MDOC Incident Detail [78-2] at 6-7.

8

b. D.H.'s statements to authorities as to what occurred

On March 9, 2015, D.H. spoke with Walnut Grove Police investigators. D.H. initially told investigators that "he had not done anything with any inmates . . . ." Investigation Supplemental Report [78-2] at 3. D.H. later stated that "he did perform masterbation [sic] in the cell with the two inmates," Plaintiff and R.H. *Id.* D.H. was then booked and charged with engaging in a sexual act with an inmate in violation of Mississippi Code § 97-3-104.[2] *Id.*; General Affidavit [78-2] at 31; Warrant [78-2] at 32.[3] The disposition of this charge against D.H. is unclear based upon the current record.

The Investigation Supplemental Report drafted by the Walnut Grove Chief of Police, Kevin Polk ("Chief Polk"), indicates that after D.H. bonded out of jail, he agreed to take a polygraph exam with the Federal Bureau of Investigation ("FBI"). Investigation Supplemental Report [78-2] at 3. According to Chief Polk's Report, on the way to the FBI office, D.H. said that "he wanted to appoligize [sic] to me for not

---

[2] This statute provides in relevant part that

[i]t is unlawful for any jailer, guard, employee of the Department of Corrections, sheriff, constable, marshal, other officer, or employee of a law enforcement agency or correctional facility to engage in any sexual penetration, as defined in Section 97-3-97, or other sexual act with any offender, with the offender's consent, who is incarcerated at any jail or any state, county or private correctional facility or who is serving on probation, parole, earned-release supervision, post-release supervision, earned probation, intensive supervision or any other form of correctional supervision.

Miss. Code § 97-3-104(1).

[3] D.H. was charged with violations of Mississippi Code § 97-3-104 as to Plaintiff, J.J., and R.H. *See* General Affidavits [78-2] at 18, 29, 31; Warrants [78-2] at 19, 30, 32.

9

telling me the truth. He stated that he did infact [sic] have sex with [R.H.] and [Plaintiff]," but D.H. purportedly denied such conduct with J.J. *Id.* On May 1, 2015, Plaintiff provided a voluntary written statement to police. *See* D.H.'s Statement [78-2] at 23, 28. According to D.H., while he was making rounds in Unit 8B, Plaintiff's cellmate stopped him and initiated sexual contact with D.H. *Id.* at 23. D.H. stated that he masturbated in the cell, and then Plaintiff woke up and began doing the same. *Id.* D.H. then exited the cell. *Id.* at 28.

Plaintiff took D.H.'s deposition in this case on October 14, 2016. *See* D.H.'s Dep. [78-3] at 1. D.H. invoked his Fifth Amendment privilege against self-incrimination to questions surrounding the incident. *Id.* at 32-36, 41.

c.  Evidence supplied by D.H. in opposition to summary judgment

In opposition to Plaintiff's Motion [76], D.H. has supplied the deposition [97-2] of Demario Walker under seal. Mr. Walker was incarcerated with Plaintiff's former cell mate, R.H., at South Mississippi Correctional Institution ("SMCI") after R.H. was transferred from WGCF following the alleged sexual assault. Mr. Walker testifies under oath that R.H. informed him that R.H., J.M., and another inmate at WGCF had devised a plan for financial gain by accusing D.H. of sexual assault, which they carried out. Mr. Walker's Dep. [97-2] at 14-17. According to Mr. Walker, once R.H. was transferred to SMCI, R.H. requested that Mr. Walker draft an Administrative Remedy Program ("ARP") grievance on his behalf regarding the purported assault, but Mr. Walker declined because "what [R.H.] wanted to write did not actually occur the way he wanted [Mr. Walker] to write it." *Id.* at 23-24.

10

R.H. next went to another inmate at SMCI, Martin Groot, to write the ARP. *Id.* at 24-25. D.H. has supplied the deposition [97-1] of Mr. Groot, which has been filed under seal. Mr. Groot testifies that he drafted a "sensitive ARP"[4] on R.H.'s behalf about the incident at WGCF. Mr. Groot's Dep. [97-1] at 29-30. After R.H. received a response indicating that the ARP was accepted as a sensitive issue, R.H. purportedly informed Mr. Groot that the alleged sexual assault by D.H. was a "hoax," and that R.H. and J.M. had falsely claimed they were raped by D.H. *Id.* at 31-33. On May 19, 2015, Mr. Groot sent a letter to the warden of WGCF which stated that R.H. confided in Mr. Groot that R.H. and Plaintiff had "conspired together to 'set-up' Corrections Officer [D.H.] by alleging that this C.O. sexually assaulted or otherwise raped them . . . ." Mr. Groot's Letter [78-2] at 38.

3.   <u>Genuine issues of material fact preclude summary judgment.</u>

The summary judgment evidence submitted by the parties demonstrates that there are differing versions of what actually occurred between D.H. and Plaintiff, and to the extent any sexual contact occurred between D.H. and Plaintiff, there is a dispute whether such contact was consensual. The statute under which D.H. was charged makes it a state crime for a correctional officer to engage in a sexual act with an offender, even with the offender's consent. *See* Miss. Code § 97-3-104(1). While consensual acts may be a crime under Mississippi law, Plaintiff has cited no controlling authority which indicates that such consensual sexual acts would violate

---

[4] Mr. Groot explained that a "sensitive ARP" meant that an inmate could "bypass the regular procedures, regular channels, and it goes straight to the deputy commissioner." Mr. Groot's Dep. [97-1] at 30.

11

an inmate's constitutional rights under the Eighth Amendment. *See, e.g., Olivarez v. GEO Group, Inc.*, 844 F.3d 200, 205 (5th Cir. 2016) (holding that recordings of § 1983 plaintiff's phone calls from prison had substantive value because they tended to establish that the inmate plaintiff had "initiated consensual sex" with the defendant correctional employee); *Ashley v. Perry,* No. CV 13-00354-BAJ-RLB, 2015 WL 9008501, at *3 n.6 (M.D. La. Dec. 15, 2015) ("Consensual sex between consenting adults does not give rise to an Eighth Amendment violation simply because it occurs within the walls of a prison." (quotation omitted)).[5]

While Plaintiff relies upon D.H.'s invocation of the Fifth Amendment during his deposition, this is not by itself conclusive on the question of liability. *See*

---

[5] *See also, e.g., Graham v. Sheriff of Logan Cty.*, 741 F.3d 1118, 1124-26 (10th Cir. 2013) (declining to hold that "even consensual intercourse with a prisoner is cruel and unusual punishment," noting that "not all misbehavior by public officials, even egregious misbehavior, violates the Constitution," finding that it is "proper to treat sexual abuse of prisoners as a species of excessive-force claim, requiring at least some form of coercion (not necessarily physical) by the prisoner's custodians," holding that while the power dynamics between prisoners and guards may make it difficult to discern consent from coercion the overwhelming evidence of consent in that case meant that the plaintiff's rights under the Eighth Amendment were not violated, and affirming the district court's grant of summary judgment for the defendants); *Wood v. Beauclair*, 692 F.3d 1041, 1049 (9th Cir. 2012) (recognizing "the coercive nature of sexual relations in the prison environment" and holding that when a prisoner alleges sexual abuse by a prison guard, the prisoner is entitled to a presumption that the conduct was not consensual, which may be rebutted by showing that the conduct involved no coercive factors); *Freitas v. Ault*, 109 F.3d 1335, 1339 (8th Cir. 1997) (holding that "welcome and voluntary sexual interactions, no matter how inappropriate, cannot as matter of law constitute 'pain' as contemplated by the Eighth Amendment"); *Baca v. Rodriguez*, 554 F. App'x 676, 678 (10th Cir. 2014) (holding that inmate plaintiff failed to a state a claim for an Eighth Amendment violation because the amended complaint did not allege any facts from which it could be reasonably inferred that the prison guard "coerced [plaintiff] into having sex with him"); *Hall v. Beavin*, 202 F.3d 268, 1999 WL 1045694, at *1 (6th Cir. 1999) (affirming dismissal of plaintiff's Eighth Amendment claim at summary judgment because the evidence established that the inmate voluntarily engaged in a sexual relationship with the correctional employee).

*Slochower v. Bd. of Higher Ed. of City of N.Y.*, 350 U.S. 551, 557-58 (1956).[6] At least as to some of the questions posed, a jury may be able to draw an adverse inference as to D.H.'s invocation of his rights. *See, e.g., Hinojosa v. Butler*, 547 F.3d 285, 291-92 (5th Cir. 2008). However, the Fifth Circuit has held that "[a] grant of summary judgment merely because of the invocation of the fifth amendment would unduly penalize the employment of the privilege." *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 119 n.3 (5th Cir. 1990) (quoting *United States v. White*, 589 F.2d 1283, 1287 (5th Cir. 1979)); *see also Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 F. App'x 444, 446 (5th Cir. 2013). One learned treatise has explained that:

> [i]n some cases if a party claims the privilege and does not give his or her own evidence there will be nothing to support his or her view of the case and an adverse finding or even a directed verdict or grant of summary judgment will be proper. But it does not necessarily follow that a party will be unable to prove his or her case or rebut the opponent's case without his or her own testimony.

Privileged Matter—Privilege Against Self-Incrimination, 8 Fed. Prac. & Proc. Civ. § 2018 (3d ed.) (citations omitted).

In this case, in opposing summary judgment D.H. has relied in part upon the deposition testimony of Mr. Walker and of Mr. Groot. Plaintiff maintains their testimony as to the alleged fabrication of the sexual assault constitutes inadmissible

---

[6] In *Slochower*, the United States Supreme Court held that

> [t]he privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent either to a confession of guilt or a conclusive presumption of perjury. [A] witness may have a reasonable fear of prosecution and yet be innocent of any wrongdoing. The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances.

*Slochower*, 350 U.S. at 557-58.

13

hearsay, which D.H. cannot rely upon to defeat summary judgment. Reply [106] at 3-4. However, D.H. relies upon more than just Mr. Walker's and Mr. Groot's depositions, such that the Court need not resolve Plaintiff's objection to this testimony at this time. D.H. points out that the record also contains evidence of his version of events, wherein he stated that he only masturbated in Plaintiff and R.H.'s cell, and that the conduct was consensual.

Even if Chief Polk's Report supports Plaintiff's position that D.H. confessed that he in fact had sex with Plaintiff, there is no indication in Chief Polk's Report that D.H. ever admitted that the interaction with Plaintiff was nonconsensual. Based upon the current record as a whole, viewing the facts and drawing reasonable inferences in the light most favorable to D.H. as the nonmoving party, as the Court must at this stage, a genuine dispute of material fact exists as to whether D.H. violated Plaintiff's constitutional rights. This precludes summary judgment. Plaintiff's Motion for Partial Summary Judgment [76] should be denied.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant D.H.'s Motion for Judgment on the Pleadings [80], and Plaintiff J.M.'s Motion for Partial Summary Judgment [76] are both **DENIED**.

**SO ORDERED** this the 21st day of August, 2017.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE